CASE No. 992.

THOMPSON v. BRANNON.

1. Appellant having submitted to a ruling, which admitted testimony against his objections, could not, of right, renew the objections here; but this court declined, of its own motion, to enforce the rule.
2. In a case involving title to a piece of land of which neither party has had actual possession, private plats in defendant's possession, made for former claimants through whom the defendant claims, are admissible in evidence as part of his muniments of title, to show the extent of his claim.
3. The Circuit judge having, upon inspection and without proof, admitted in evidence a paper purporting to be a grant of over a hundred years ago,

found in the possession of a present owner of part of the land covered by the grant, this court, without further information upon the subject, cannot disturb his ruling.

4. Deeds and other writings over thirty years old may be offered without formal proof of their execution, if the witnesses be dead, when there is no doubt as to their genuineness, and when they come from the proper custody.

5. A deed of 1784, without any probate endorsed, and which was not registered, was properly admitted in evidence, the heir of the grantee having made plat covering the land, paid taxes, and cut some wood on it.

6. A deed of 1772, bearing the signature of only one witness, A, but probated by another, B, before a justice of the peace, as duly executed by A, B and C, and the signature of the justice being proven, was properly admitted in evidence.

7. From possession of land, under color of title for twenty-five years, a grant is presumed.

8. In a contest between two parties, neither of whom had ever been in actual possession of the land in dispute, but both claiming under color of title, the presiding judge properly charged the jury that if there was a joint occupation, the title must prevail.

9. In locating land in dispute, marks and trees should govern in preference to courses and distances.

10. Improper testimony was admitted, but as it was not material and could not have affected the result, this court would not disturb the judgment.

Before WALLACE, J., Chester, October, 1879.

These two cases involved the title to about twenty-one acres of land in Chester county. The plaintiff, Richard C. Thompson, claimed as sole heir of his father, who purchased from the estate of Richard E. Kennedy, who obtained the same as part of a tract of land covered by a grant from the state, dated September 26th, 1845. The land was never cleared or occupied. The plaintiff got logs there in 1867; and stocks a few years later, when the defendant objected. He got sills from the land afterwards, and James Brannon, the defendant here, indicted Thompson; but the solicitor dismissed the prosecution, as the land was in dispute. Dr. Thompson, plaintiff's father, got timber from the land more than twice, and a good many rails; William Black, through whom defendant derived title, once saw Dr. T. getting timber on this land.

The defendant offered in evidence a paper purporting to be a

grant from King George II., dated in 1755, of four hundred and fifty acres of land in Anson county, North Carolina, granted to Matthew Floyd, described as lying on the north side of Broad river, and one of the boundaries being John Elliott's line.* The paper came from the possession of J. D. Smarr, now the owner of part of this four hundred and fifty acres. [Objected to, because there was no evidence of its ever having been a grant. Objection overruled upon inspection of the paper.]

Defendant offered deed from Matthew Floyd to William Hillhouse, dated December 27th, 1755, for four hundred and fifty acres—one boundary being John Elliott's line, and calls for a line running north 81, east 75, to a white-oak. This deed was regularly proved and recorded in the clerk's office of Anson county, North Carolina, April 27th, 1756.

On the back of this deed appears the following endorsement:

" I do sign over my right and title of the within deed to Archibald Robinson, for value received.

" Witness my hand.              WILLIAM HILLHOUSE."

There also appears upon the back of this deed another certificate of registration by Robert Harris, public register of Anson county, which is to the right of and lower down on the back of the deed than the assignment of William Hillhouse.

Defendant next offered deed from Archibald Robinson and Sarah, his wife, to John Wilson, for one hundred acres of land in Tryon county, North Carolina, dated March 11th, 1772, which is described in the deed as a part of a tract of four hundred and fifty acres, granted to Matthew Floyd; by him conveyed to William Hillhouse, and by Hillhouse to said Archibald Robinson; it calls for John Elliott's line and the white-oak corner.

This deed bears now the signature of only one witness, John Waterson; was proved before Joseph Brown, a justice of the peace of Craven county, South Carolina, on August 4th, 1772,

---

* A large portion of the upper part of South Carolina was, at that time, supposed to belong to North Carolina. In tracing back titles to land lying north of Pacolet river, in Union county, South Carolina, I have found the original grants to be from the State of North Carolina.—REPORTER.

by the oath of Samuel Robinson, who swears that John Water-
son and Joseph Scott, with deponent, witnessed its execution and
subscribed their names as witnesses thereto, together with this
deponent. It was proved that Brown, before whom the execu-
tion of the deed was proved in 1772, had died in 1822, and that
the signature to this probate seemed to be the same writing as
that which was acknowledged to be his handwriting.

[The plaintiff objected to the introduction of this paper pur-
porting to be a deed, because it was executed in the presence of
only one witness, and there was no proper probate showing its
execution or registration. Objection overruled by the court.]

The defendant next offered in evidence a paper purporting to
be a deed from John Wilson and wife, Elizabeth, of Camden
District, South Carolina, to Robert Black, dated March 25th,
1784, for one hundred acres, which, the deed says, is a part of a
tract of four hundred and fifty acres, granted to Matthew Floyd ;
by him conveyed to William Hillhouse; by him conveyed to
Archibald Robinson ; and by him conveyed to the said John
Wilson. The deed calls for John Elliott's line and the white-
oak corner. It was witnessed by John Clark, Aaron Lockhart
and Stewart Brown. There was no probate of any kind endorsed
on this deed. The description of the tract of land conveyed in
this last-named deed, after giving the courses and distances, was
as follows : " A plantation or tract of land, containing one hun-
dred acres, situated on the north side of Broad river, being part
of a tract of four hundred and fifty acres granted to Matthew
Floyd by the governor of North Carolina, and transferred from
him by deed of conveyance to William Hillhouse, and from him
to Archibald Robinson ; and from Archibald Robinson to the
said John Wilson." [The plaintiff objected to the introduction
of this deed, on the ground that there was no proof whatever of
its execution. Objection overruled by the court.] Mrs. Bran-
non was sworn at this point and testified that she had seen this
deed and the other papers shown her, and which were offered in
evidence in this case, except the Floyd grant and deed to Hill-
house, in the possession of Mr. William Black, more than thirty
years ago.

2 M

Defendant offered in evidence a plat of one hundred and forty acres of land, embracing the land in dispute, which had the following remarks :

"Pursuant to the request of Mr. William Black, I have resurveyed a tract of land having such shapes and boundari·s as the above plat represents.

"J. Robinson.

"April 19th, 1844."

[Objected to by plaintiff as merely a private plat, not referred to in any of the deeds. Objection overruled by the court.]

Defendant offered in evidence a receipt dated October 11th, 1758, acknowledging the payment by William Hillhouse of £2 14s. to Robert McClenachall for three years of quit rent of four hundred and fifty acres of land in Anson county, due to his Majesty.

The papers are all old in appearance. The grant to Floyd, and the deed from him to Hillhouse, with the transfer endorsed to Robinson, came from the possession of J. D. Smarr, who owns the largest part of the Floyd grant. The other deeds and papers offered in evidence, the defendant got from Mary C. Hagerty, when he bought the land.

Mrs. Rebecca Brannon, witness for defendant, testified : Became acquainted with William Black in 1844; knew him before, but was not acquainted with him ; witness was born in 1820 ; lived on Turkey creek, in Chester county, in 1844; had seen Black some time in 1830 ; he was then living at this same place, near the land in dispute; his house was in a few hundred yards of the land in dispute; he was moved off the place during the war, down to Jerry Hagerty's place; he died in June, 1864 ; William Black paid taxes on the land in dispute, and got what wood he wanted to burn off it; he did this from 1844 on till he moved to Hagerty's; he used it as he did all his other land ; witness paid taxes for William Black; part of it had been cultivated—part of it had been fenced; there is on it now the old fence row; part of it has been fenced all the way; it has grown up in pines since that; part of it has gullies; some in woods—some old fields; witness was a cousin of Richard Kennedy's wife;

when he sent Hagerty after the titles he told Hagerty that he would give him $10 if he would go and get back that night; Black always claimed the land; in 1842, Kennedy said that old Mrs. Black had died, and all the others were old and would not claim the land and he would get it all; Robert Black lived there before William Black; he was William Black's father, and William Black inherited this land from his father; William Black died in June, 1864, and Jerry Hagerty in August, 1864; Mary C. Hagerty is still alive—she was the wife of Jerry Hagerty; Jerry had no other relatives but his wife.

Cross-examined.—Is the stepmother of James Brannon, the defendant; never saw Robert Black; Kennedy got Black's papers to run the land; told Black that Robinson claimed some land; afterward he gave Black back his papers; Hagerty carried the chain in 1844; witness stayed with Kennedy's wife; old Mr. Robert Black's children said he cultivated that land.

Re-cross-examined.—Heard William Black and his sister both say that Robert Black, their father, worked the land.

[The plaintiff objected to the declarations of William Black and his sister being admitted. Objection overruled by the court.]

The defendant then introduced the will of William Black, dated July, 1862, in which he gives his whole land to Jerry Hagerty and his wife, Mary C. Hagerty.

The defendant offered office copy of deed from Mary C. Hagerty to James T. Brannon, the defendant, dated February 27th, 1875, calling for two hundred and twenty acres, and covering the land on which the trespass is alleged to have been committed.

Also plat made by Richard Thompson, Sr., plaintiff's grandfather, dated December 29th, 1834, being a survey of the land of Thomas McDaniel, lying along and bounding the land in dispute, in which the surveyor refers to the lands in dispute as the "lands of Black." [Objected to by plaintiff. Objection overruled by the court.]

It was in proof that William Black, in 1857, and Mrs. Hagerty, after the war, got timber from this land.

Plaintiff proved that Jerry Hagerty carried the chain at the survey made by Kennedy's direction.

One of the surveyors appointed by the order of the court, reported that the defendant's papers called for a white-oak, which he believed to be at figure 3 (on the plat), and which, to reach, would extend the distance 13.25 chains.

The jury found a verdict for the defendant in both cases.

The plaintiff appealed to this court upon the following grounds:

1. Because his Honor erred in charging the jury that if they found William Black to have been in possession under color of title for twenty years, that they must presume a grant, which permitted the jury to presume a grant senior to the grant from which the plaintiff derived title.

2. That his Honor erred when requested by the plaintiff to charge the jury that if they found the plaintiff's grant, or Richard Kennedy was in possession of a part of the land in dispute under a perfect title, that the possession of part was the possession of the whole, and the plaintiff was entitled to recover. His Honor did charge the jury that if the possession of part was joint, then the title must prevail, when there was no evidence whatever of any joint possession of fourteen acres.

3. That his Honor erred when requested to charge the jury that if the plaintiff was in possession of a part of the premises under his title, his possession of a part was possession of the whole; and if adverse to Mrs. Hagerty's title for ten years, plaintiff must recover; his Honor did charge the jury that if there was a joint occupation of a part of the land the title must prevail, when there was no evidence whatever of a joint occupation of fourteen acres.

4. Because, under the circumstances of this case, it was error in his Honor to charge the jury that, in fixing the location of the land in dispute, they must be governed by the marks and trees, in preference to the courses and distances. Overruled.

*Mr. S. P. Hamilton,* for appellant.

*Mr. J. J. Hemphill,* contra.

March 11th, 1881.   The opinion of the court was delivered by SIMPSON, C. J.   The appeal in this case embraces two cases, between the same parties, which were tried together below: one

for claim and delivery of certain pieces of board timber, and the other in the nature of an action of trespass *quare clausum fregit* —the main question below being a question of title to a certain tract of land described in the complaint.

The verdict in both cases was for the defendant below—respondent here. The plaintiff has appealed, and his appeal is founded upon objections, made during the progress of the trial, to the admission of certain testimony hereafter to be noticed, and on exceptions to the refusal of the judge to grant a new trial upon grounds which will be found below.

The brief fails to show that any exception was taken to the rulings of the Circuit judge on the questions raised during the trial as to the admissibility of evidence. Objection was made, but the appellant seems to have submitted to the rulings of the presiding judge without excepting. According to strict rule the failure thus to except would preclude the raising of these objections here; but the respondent has not claimed the enforcement of the rule, and the court is not disposed, on its own motion, to do so.

Neither of the parties appears to have been in the actual possession of the precise piece of land upon which it is alleged the trespass complained of was committed. Each endeavors to show, however, that it is within the boundary of his claim, and for that purpose respondent introduced two plats, one known as the Enloe plat and the other as the William Black plat, as covering this land. The Enloe plat was made in 1868 for the immediate grantor of respondent, and the Black plat was made in 1844 for William Black, under whom respondent's grantor claimed. These were both private plats.

In *Simmons* v. *Parsons*, 2 *Hill* 492, the court said: " That color of title is anything which shows the extent of the occupant's claim " In *Slice* v. *Dessick*, 2 *Rich.* 629, Judge O'Neall said: "That marking of trees on line or making a survey may constitute color of title, although it is true that these in themselves would not constitute such a possession as would bar the owner of legal title." In *Turnipseed* v. *Hawkins*, 1 *McC.* 278, an old survey, made for the party in possession, was admitted. In *Gray* v. *Bates*, 3 *Strob.* 498, it was said that the deed, con-

tract or plat under which possession was acquired, constitutes color of title and defines or shows the extent of the occupant's claim.

The purpose of the plats introduced in the case now before the court was to show the extent of the respondent's claim, and while they cannot confer title in themselves, under the above authorities, they were admissible as evidence. One of them, at least, had come into the possession of the respondent through his grantor, Mary Hagerty, and the other from those under whom she claimed. They were a part of his muniments of title, and we think they were properly admitted for what they were worth.

The respondent introduced a paper purporting to be a grant from King George II., dated in 1755, known as the Floyd grant. The admission of this paper was objected to by appellant "because there was no evidence of its being a grant." Upon inspection the judge overruled the objection and admitted the paper. We see no reason to sustain the assignment of error here. Nothing is furnished in the argument upon which the court can found a judgment; and Judge Wallace having been satisfied, upon inspection of the paper, we cannot, in the absence of all information on the subject, disturb his conclusions.

The next objection refers to two deeds offered by respondent and admitted by the court: one deed known as the Robinson deed and the other as the Wilson Black deed, the first dated in March, 1772, and the other in March, 1784. As to the first deed, it is stated in the brief that it bears now the signature of only one witness—John Waterson. But it was proven before a justice of the peace for Craven county, South Carolina, August 4th, 1772, by the oath of Samuel Robinson, who swears that John Waterson and Joseph Scott, with deponent, witnessed the execution and subscribed their names thereto together with this deponent. The signature of the justice of the peace, who died in 1822, was proven to be genuine.

The Wilson Black deed, on its face, showed that it was executed in the presence of three witnesses; but this deed had not been probated, or, at least, there was no probate endorsed, nor had it been registered, and its introduction was objected to on that account.

The appellant's counsel has stated the true rule as to the admission of such papers. " Deeds and other writings over thirty years old may be offered without formal proof of their execution, if the witnesses be dead, where there is no doubt as to their genuineness, and when they come from the proper custody." And Mr. Greenleaf says : " Whether, if the deed be a conveyance of real estate, the party is bound first to show acts of possession under it, is a point not perfectly clear upon the authorities, but the weight of opinion seems in the negative." *Greenl., vol. I.,* § 144, and note, where possession is held not necessary.

In Swygert *v.* Taylor, where an old deed was admitted without formal proof of its execution, Judge Butler, in delivering the opinion of the court, said : " The deed purports to have been executed seventy-two years ago, and upon inspection it had all the appearance of an ancient paper. Any incontestable fact going to show that a deed was in existence more than thirty years before it is offered in evidence, will authorize its introduction as an ancient muniment of right. Possession is that which seems to be most generally resorted to for this purpose, because it is the most usual mode of asserting a right under legal title. This, however, is not indispensably necessary." 2 *McC.* 404.

In Duncan *v.* Beard, Colcock, J., said : " I take it to be a well-established doctrine that a deed of thirty years may be given in evidence without proof of its execution, if accompanied by possession, and a mere entry for the purpose of survey has been considered as sufficient possession." See, also, *Edmonston* v. *Hughes, Cheves* 82 ; *Swygert* v. *Taylor,* 1 *Rich.* 54 ; *Eubanks* v. *Harris,* 1 *Spears* 176.

The deed from Wilson to Robert Black was dated in 1784, and William Black, under whom Mary Hagerty claimed, inherited from Robert Black, his father. William Black had plat made in 1844 covering the land, paid taxes, and, in the language of one of the witnesses, got what wood he wanted to burn off of it. We think this deed was properly admitted. The Robinson deed was executed long before the act of 1795, and we think there was no error in the presiding judge permitting it to go to the jury. As to its effect a question might have been raised. *Craig* v. *Penson, Cheves* 272.

Appellant, we think, must fail to take any benefit from his exceptions to the charge of the judge—both as to the charge itself and as to his refusal to charge the propositions requested by appellant.

The judge instructed the jury that if they found that William Black had been in possession under color of title for twenty-five years, they must presume a grant. The judge did not discuss the facts as to whether Black had been in possession long enough to presume a grant; on the contrary, he distinctly left this to the jury. The facts may or not have been sufficient to warrant the jury in finding the necessary possession; this was entirely for them, and the judge in substance so said. Was he in error in this charge? Appellant's counsel extracts from *McLure* v. *Hill*, 2 *Const. R.* 420; and *Smith* v. *Asbell*, 2 *Strob.* 141, this rule: " The facts necessary to authorize the presumption of a grant of land are, that the possession was adverse and that it was continuous for twenty years." The charge of the presiding judge was in accordance with this rule, and, therefore, must be sustained.

The appellant requested the judge to charge " that if the jury found that plaintiff was in possession of part of the premises under his title, his possession of a part was possession of the whole; and if adverse to Mrs. Hagerty's title for ten years, plaintiff must recover." This, in substance, was the request found in exceptions of both two and three. The judge, in response, charged that if there was a joint occupation of part of the land, the title must prevail.

Here was a contest between two parties, neither of whom had ever been in actual possession of the precise *locus* upon which the trespass was committed, but both claiming by virtue of being in possession of part and color of title reaching over the place in dispute. Under such circumstances the charge of the judge, if founded in law, was the exact charge which the case required as fair to both parties. The proposition requested by the appellant might have been, and no doubt was, a correct legal proposition —as an independent statement; but if the judge had simply charged that proposition and stopped, it might have misled the jury to the prejudice of the respondent.

We think, therefore, that there was no error on the part of the

judge in the response which he made to appellant's request, if it be that the principle which he laid down was correct. Was it correct? " Where there are interfering claims to land without any actual possession of the disputed parcel, the rule of law is that the possession shall be adjudged to him who has the right." *Sims* v. *Meacham,* 2 *Bail.* 101. " Where there are two possessions in the same body of land—one under a senior and another under a junior grant—the senior title will prevail." *Alston* v. *Collins,* 2 *Spears* 459. Other authorities might be added, but these are sufficient. They fully sustain the charge as to this point.

The charge given to the jury—that, in fixing the location of the land in dispute, marks and trees should control courses and distance—is also made a ground of exception.

In locating lands the following rules are resorted to, and generally in the order stated : 1. Natural boundaries. 2. Artificial marks. 3. Adjacent boundaries; and, 4. Courses and distance. *Fullward* v. *Graham,* 1 *Rich.* 491. See, also, the cases of *Bradford* v. *Pitts,* 2 *Mills' Const. R.* 115; *Starke* v. *Johnson,* 2 *McC.* 9. These cases vindicate this last ruling of the presiding judge.

Several other questions were discussed in the argument, but these were not found in the exceptions, and we have not felt called upon to review them ; and, besides, some of them were questions of fact; with these we have nothing to do. In a case like this, the province of this court is to correct errors of law ; therefore we have confined ourselves to the legal questions raised. We think the declarations of William Black and of his sister, as detailed by the witness Mary Brown, were inadmissible, as hearsay, and, according to strict rule, they might have been excluded, but they do not seem to have been very material, and their exclusion could not have changed the result.

The appeal is dismissed.

McIver and McGowan, A. J.'s, concurred.